Eric **SCARBOROUGH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–99–206–CR.

Court of Appeals of Texas, Waco.

Aug. 1, 2001.

Rehearing Overruled Aug. 22, 2001.

Frank Blazek, Smither, Martin, Henderson & Blazek, P.C., Huntsville, for appellant.

Mark D. Mullin, Special Prosecution Unit, Huntsville, for appellee.

Before Chief Justice DAVIS, Justices VANCE, and GRAY.

## OPINION

DAVIS, Chief Justice.

A jury convicted Eric Scarborough of possession of a deadly weapon in a penal institution. The court assessed punishment at five years' imprisonment. Scarborough claims in two points that the court erred by: (1) denying his motion to disqualify the attorney *pro tem;* and (2) sentencing him without a presentence investigation (PSI) report.

### ATTORNEY *PRO TEM*

Scarborough's first point challenges the court's denial of his motion to disqualify the attorney *pro tem.* The State responds that no error occurred because any conflict of interest which may exist in this case

does not rise to the level of a due process violation.

### PERTINENT FACTS

A grand jury returned the indictment against Scarborough on June 20, 1997. The court appointed William C. Bennett, Jr. to represent him on August 15. The citizens of Madison County elected Bennett to the newly-created office of Criminal District Attorney of that county in November 1998. Accordingly, Bennett withdrew from representing Scarborough and disqualified himself from the prosecution of Scarborough's case. *See* TEX.CODE CRIM. PROC. ANN. art. 2.01 (Vernon Supp.2001). The court appointed new counsel for Scarborough.

Bennett appointed Latham Boone to serve as an assistant district attorney in January 1999. Before voir dire commenced, Boone disqualified himself from the prosecution of the case because he had held a position as Bennett's assistant. Accordingly, the court appointed Mark Mullin as attorney *pro tem. Id.* art. 2.07(a) (Vernon 1977). Scarborough objected to Mullin's appointment because Mullin is a prosecutor in the Special Prison Prosecution Unit based in Huntsville, of which Boone is the chief prosecutor.

Mullin testified that Boone is his employer. He explained that he prosecutes prison cases primarily in Jefferson and Polk Counties. On occasion, he also prosecutes cases in other counties when the need arises. He has taken the oath of office for an assistant district attorney only in Jefferson County.[1] Scarborough asked Mullin whether he was prepared to exercise prosecutorial discretion in the case (*i.e.*, whether he would consider not prosecuting the case in the interest of justice). Mullin replied, "[W]hat I'm going to do is what my boss tells me. And he's told me to prosecute the case today. And that's what I'm going to do." In response to a question by the court, Mullin testified that he was not appointed by Bennett and does not work for him.

Mullin testified that he had absolutely no familiarity with the facts of Scarborough's case beyond Scarborough's name and the fact that it involved a prisoner in possession of a weapon.

Boone testified that he did not believe that Mullin had ever prosecuted a case in Madison County. He clarified that he had asked Mullin whether he would be available to prosecute Scarborough's case when the issue of his disqualification arose. Upon examination by the court, Boone testified that Mullin has the authority "to do what he believes is correct in the prosecution of the case."

After Scarborough reurged his motion to disqualify Mullin, Mullin stated to the court:

> Mr. Boone has testified that I have the discretion in how to handle the case. What I intend to do, if we get a break

1. Apparently, the practice of the Special Prison Prosecution Unit is to have each of its prosecuting attorneys take the oath of office in one county. Boone, for example, took his oath in Madison County. Thus, when prison prosecutors appear in other counties, they appear as "special prosecutors." *See Stephens v. State,* 978 S.W.2d 728, 731 (Tex.App.-Austin 1998, pet. ref'd). As the Austin Court explained:

> A "special prosecutor" with the consent of the district attorney, assists the district attorney in the investigation and prosecution of a particular case, but the district attorney is responsible for the prosecution, control and management of the case. The "special prosecutor" need not be appointed by the trial court and is not required to take the constitutional oath of office where he acts with the permission of the district attorney. *Id.* (citing *State v. Rosenbaum,* 852 S.W.2d 525, 529 (Tex.Crim.App.1993) (Clinton, J., concurring)).

before the jury comes, is I'm going to look at the file and read it and decide if it's a prosecutable case, in my opinion. And I'm going to decide what to do and then I'm going to proceed forward.

Scarborough objected that Mullins statement "is contrary to the evidence in the record." The court overruled the objection and denied his motion to disqualify Mullin.

### THE SPECIAL PRISON PROSECUTION UNIT

According to Boone, a group of five district attorneys from counties with prison

units applied for a criminal justice grant in 1984 to fund an office to handle the prosecution of prison crimes in those five counties.[2] Upon approval of the grant request, these district attorneys established the Special Prison Prosecution Unit.[3] *See* Act of May 29, 1983, 68th Leg., R.S., ch. 1095, art. IV, § 1, 1983 Tex. Gen. Laws 5729, 6166. Although this unit has apparently continued in existence since that time, our research does not disclose such funding again until 1997.[4] *See* Act of May 29, 1997, 75th Leg., R.S., ch. 1452, art. IV, § 1, 1997 Tex. Gen. Laws 5535, 6018.

**2.** Boone testified that Scarborough's present counsel was one of these district attorneys. At oral argument, Scarborough's counsel characterized the relationship among these district attorneys as an interlocal agreement. *See* The Interlocal Cooperation Act, 62d Leg., R.S., ch. 513, 1971 Tex. Gen. Laws 1751 (formerly codified as Tex.Rev.Civ. Stat. Ann. art.4413(32c)), *repealed by* Act of April 2, 1991, 72d Leg., R.S., ch. 38, § 2, 1991 Tex. Gen. Laws 432, 466 (current version at Tex. Gov.Code Ann. §§ 791.001–791.032 (Vernon 1994 & Supp.2001)).

**3.** In the 1983 general appropriations bill, the 68th Legislature allocated $62,575 for fiscal year 1984 "[f]or payment to Walker County, Texas, for prosecution of an offense committed while the actor was a prisoner in the custody of the Department of Corrections or while the actor was an employee of the Department of Corrections in the discharge of his official duties." *See* Act of May 29, 1983, 68th Leg., R.S., ch. 1095, art. IV, § 1, 1983 Tex. Gen. Laws 5729, 6166. The 68th Legislature also enacted article 1036 of the Code of Criminal Procedure which provided:

Art. 1036. COST OF STATEMENT OF FACTS AND TRANSCRIPT. The state may pay to Walker County, Texas, for costs of prosecution of offenses committed while the actor was a prisoner in the custody of the Department of Corrections, or while the actor was an employee of the Department of Corrections in the discharge of his official duties. The court in which the case is tried shall certify the amount of reimbursement for expenses under this provision to the comptroller of public accounts. The comptroller shall

issue a warrant in that amount to Walker County subject to the amounts appropriated for this purpose. This provision applies only to the reimbursement of expenses incurred by Walker County in a prosecution which occurs after the effective date of this Act.

Act of May 30, 1983, 68th Leg., R.S., ch. 758, § 1, 1983 Tex. Gen. Laws 4562, 4562 *repealed by* Act of Feb. 22, 1989, 71st Leg., R.S., ch. 2, § 5.06(b), 1989 Tex. Gen. Laws 123, 130. The 1983 Act further provided that the Act would expire on August 31, 1985. *See* Act of May 30, 1983, 68th Leg., R.S., ch. 758, § 3, 1983 Tex. Gen. Laws 4562, 4562. In 1985, the Legislature amended article 1036 to provide for reimbursement of expenses in prison prosecution cases generally. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 529, § 1, 1985 Tex. Gen. Laws 2130, 2131, *repealed by* Act of Feb. 22, 1989, 71st Leg., R.S., ch. 2, § 5.06(b), 1989 Tex. Gen. Laws 123, 130. The original article 1036 became subsection (h) of the amended statute. *Id.* The 1985 Act again recognized that the Walker County provision expired on August 31 of that year. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 529, § 4(b), 1985 Tex. Gen. Laws 2130, 2132.

**4.** However, the Legislature did amend article 104.003 of the Code of Criminal Procedure in May 1989 to provide that the State shall reimburse a county "for reasonable operational expenses of the special prison prosecution unit" incurred in the prosecution of a felony committed by a prisoner in the custody of the Department of Criminal Justice, Institutional Division. *See* Act of May 25, 1989, 71st Leg., R.S., ch. 461, § 1, 1989 Tex. Gen. Laws 1626, 1627 (current version at Tex.Code Crim. Proc. Ann. art. 104.003(d) (Vernon Supp.2001)). To

In the 1997 general appropriations bill, the Legislature allocated $905,912 for fiscal year 1997 and again for fiscal year 1998 for the "Prison Prosecution Unit." *Id.* The bill further provides:

5. **Prison Prosecution Unit.** Out of the funds appropriated above in Item 14 and under the authority of Article 104.003, Code of Criminal Procedure, and Article V, Section 21 of the Texas Constitution, the Special Prison Prosecution Unit Board of Directors is allocated an amount not to exceed $ 905,912 in criminal justice grants in each year of the biennium, through the Judiciary Section of the Office of the Comptroller of Public Accounts, and the Criminal District Attorney's Office in Walker County. Texas, for the payment of salaries and other necessary expenses for the operation of the Special Prison Prosecution Unit. The funds are to be used for the investigation and prosecution of felony offenses committed by prisoners of the Texas Department of Criminal Justice and for the investigation and prosecution of other felonies and misdemeanors committed by agency employees and others when criminal conduct affects the operation of the agency in the various counties of the State where Texas Department of Criminal Justice facilities are located.

The funds appropriated above in Item 14 shall be used to employ the services of legal and support staff plus the payment of their necessary expenses in carrying out the purposes of the Special Prison Prosecution Unit as established by its Board of Directors which is made up of those elected prosecutors who have Texas Department of Criminal Justice facilities within their respective counties.

The Criminal District Attorney's Office of Walker County is the designated agency to administer the funds provided for the support of the Special Prison Prosecution Unit. The Criminal District Attorney shall submit a voucher containing an itemized statement of expenses to include salaries, fringe benefits and authorized expenses incurred to the Comptroller's Judiciary Section each month of the fiscal year. Such vouchers shall be reviewed by the Walker County Auditor's Office to ensure compliance with applicable State and County regulations concerning the expenditures of public funds. Upon receipt of said vouchers, the Comptroller's Judiciary Section shall issue warrants each month to reimburse the Criminal District Attorney of Walker County. The total reimbursement each year shall not exceed the amount appropriated.

The Special Prison Prosecution Unit shall submit an annual report to the Legislative Budget Board and the Governor's Office of Budget and Planning comparing the activities of the unit to the activities outlined in the grant application made to the Criminal Justice Division of the Governor's Office and detailing the expenditure of the funds.

Act of May 29, 1997, 75th Leg., R.S., ch. 1452, art. IV, § 1, 1997 Tex. Gen. Laws 5535, 6020. The 1999 and 2001 general

---

be more precise, the 71st Legislature enacted article 104.003 in February 1989 to provide for reimbursement of counties for expenses incurred in the prosecution of such prisoners. *See* Act of Feb. 22, 1989, 71st Leg., R.S., ch. 2, § 5.06(a), 1989 Tex. Gen. Laws 123, 129–30. This enactment represented merely a nonsubstantive codification of the former article 1036. *Compare id. with* Act of May 27, 1985, 69th Leg., R.S., ch. 529, § 1, 1985 Tex. Gen. Laws 2130, 2131. As noted above, the 71st Legislature amended article 104.003 three months after its initial enactment to specifically provide reimbursement "for reasonable operational expenses of the special prison prosecution unit."

appropriations bills contain similar provisions. *See* Act of May 24, 2001, 77th Leg., R.S., ch. 1515, art. IV, § 1, 2001 Tex. Sess. Law Serv. —— (Vernon); Act of May 26, 1999, 76th Leg., R.S., ch. 1589, art. IV, § 1, 1999 Tex. Gen. Laws 5446, 5944–46.

## PERTINENT AUTHORITIES

Boone chose to disqualify himself because of the decision of the San Antonio Court of Civil Appeals in *State v. May*. 270 S.W.2d 682 (Tex.Civ.App.-San Antonio 1954, no writ). In *May*, the district attorney of the 79th Judicial District and the county attorney of Duval County were disqualified from the prosecution of certain criminal proceedings in that county. The district court refused the assistant district attorney's request to conduct the prosecution of these cases. The court appointed the district attorney from the neighboring 81st Judicial District as attorney *pro tem*. The assistant district attorney then filed a motion for leave to file a quo warranto petition challenging the attorney *pro tem's* authority to represent the State in the proceedings at issue. The district court overruled the motion for leave, and the assistant appealed.

The Court of Civil Appeals found no abuse of discretion. *See May*, 270 S.W.2d at 684. The court observed that, because the assistant "serve[d] at the will and pleasure of the District Attorney[,] ... it would seem that if the District Attorney was disqualified, his assistant, who was appointed by him and who serves at his will and pleasure, would also be disqualified." *Id.* (citations omitted); *accord State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 5 n. 5 (Tex.Crim.App.1990) (orig. proceeding) ("if an elected district attorney has

been lawfully disqualified from prosecution of certain causes, so have his assistants").

In *Edwards*, the trial court disqualified the elected district attorney and his staff from the prosecution of a particular defendant's case because one of the assistant district attorneys had previously represented the defendant in the matter. The Court of Criminal Appeals granted the prosecutor's mandamus petition because a trial court has no authority to disqualify an elected district attorney. *See Edwards*, 793 S.W.2d at 5–6. The Court observed that the responsibility for recusal under article 2.01 because of a conflict of interest rests with the prosecuting attorney, not the trial court. *Id.* 793 S.W.2d at 6.

■ These decisions establish two pertinent principles regarding the disqualification of elected district or county attorneys and their assistants who have previously represented a defendant in a particular matter. First, if an elected prosecuting attorney has previously represented a defendant in a particular proceeding, then article 2.01 disqualifies him from representing the State in the matter and that disqualification is imputed to those assistants "who serve[ ] at his will and pleasure." *May*, 270 S.W.2d at 684; *accord Edwards*, 793 S.W.2d at 5 n. 5. Second, if an assistant district or county attorney has previously represented a defendant in a particular proceeding, then that particular attorney is disqualified from assisting in the prosecution of the case, but the elected prosecutor and his other assistants are not.[5] *See Edwards*, 793 S.W.2d at 5–6.

## APPLICATION

Boone, as chief prosecutor of the Special Prison Prosecution Unit, functions much as an elected district attorney. He em-

---

**5.** In this instance of course, the attorney who previously represented the defendant should "be separated from any participation" in the

matter. *See State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 6 n. 6 (Tex.Crim.App.1990) (orig. proceeding).

ployees attorneys to serve in the unit. He assigns them to particular counties to assist the local prosecutors. He answers to the Board of Directors of the Special Prison Prosecution Unit, much as a local prosecutor answers to a commissioners court on budgetary issues.[6] The primary difference between Boone and an elected prosecuting attorney is that Boone answers to the Board of Directors while an elected prosecutor answers to the electorate.

Nevertheless, we believe the first principle noted above applies to the Special Prison Prosecution Unit. Namely, if the chief prosecutor of the Unit is lawfully disqualified because of an actual conflict of interest, then the other prosecuting attorneys in the Unit are likewise disqualified. *Cf. May,* 270 S.W.2d at 684; *accord Edwards,* 793 S.W.2d at 5 n. 5. However, when the chief prosecutor is disqualified because of an imputed conflict, a different rule applies.

We assume without deciding that Boone's disqualification is mandated by the principle enunciated in *May.* So assuming, his disqualification is mandated because Bennett's actual knowledge of the facts pertinent to Scarborough's case, which he gained while Scarborough's attorney, is imputed to Boone because of his appointment as Bennett's assistant. *See May,* 270 S.W.2d at 684.

▇ Scarborough contends that the knowledge imputed to Boone should also be imputed to Mullin, Boone's employee. However, Texas courts have rejected this theory of "double imputation." *See J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris,* 776 S.W.2d 271, 282 (Tex. App.-Dallas 1989, no writ); *Enstar Petroleum Co. v. Mancias,* 773 S.W.2d 662, 664

(Tex.App.-San Antonio 1989, orig. proceeding [leave granted, mand. denied] ).

Because Boone's disqualification is based on imputed knowledge rather than actual knowledge, Mullin cannot be disqualified solely on the basis of knowledge imputed to Boone. *Id.* Thus, we overrule Scarborough's first point.

## PRESENTENCE INVESTIGATION REPORT

Scarborough argues in his second point that the court erred by sentencing him without ordering a presentence investigation (PSI) report. The State cites *Turcio v. State* for the proposition that the decision to order a PSI is "discretionary and optional" in a case such as Scarborough's in which the court assesses punishment. 791 S.W.2d 188, 191 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd).

The Court of Criminal Appeals has recently overruled the *Turcio* line of cases, holding instead that "upon a defendant's timely request, in felony cases, a trial court must order preparation of a PSI." *Whitelaw v. State,* 29 S.W.3d 129, 134 (Tex.Crim.App.2000). The trial court must do so "even when a defendant is *not* eligible for community supervision." *Id.* at 132.

Scarborough timely requested a PSI. The court overruled his request. Thus, the court erred. Accordingly, we must determine whether this error requires reversal. *See* Tex.R.App. P. 44.2; *see also Whitelaw,* 29 S.W.3d at 132 ("[t]he fact that the defendant had a full punishment hearing may well impact whether the error was harmless"). The court's failure to order a PSI constitutes non-constitutional error. Thus, the harmless error provi-

---

**6.** Unlike the Board of Directors of the Special Prison Prosecution Unit however, a commissioners court has no authority to interfere in

the administration of a local district or county attorney's office. *Cf. Edwards,* 793 S.W.2d at 5.

sions of appellate rule 44.2(b) apply. *See* TEX.R.APP. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Fowler v. State,* 958 S.W.2d 853, 866 (Tex. App.-Waco 1997), *aff'd,* 991 S.W.2d 258 (Tex.Crim.App.1999).

■ Under rule 44.2(b), we must determine whether Scarborough's "substantial rights" were affected by the court's failure to order a PSI. *See* TEX.R.APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the [court's] verdict." *King,* 953 S.W.2d at 271 (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557, 1572 (1946)).

■ Scarborough contends that he was harmed by this error because "[a] properly informed trial court may have decided to decline the finding of a deadly weapon and consider probation." However, the court did not make a deadly weapon finding and Scarborough did not request that the court suspend imposition of sentence and place him on community supervision.

A PSI report is a written report prepared by a community supervisions officer which describes:

> the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the judge. It is not necessary that the report contain a sentencing recommendation, but the report must contain a proposed client supervision plan describing programs and sanctions that the community supervision and corrections department would provide the defendant if the judge sus-

pended the imposition of the sentence or granted deferred adjudication.

TEX.CODE CRIM. PROC. ANN. ART. 42.12, § 9(a) (Vernon Supp.2001).

A PSI report informs the trial court's sentencing discretion by providing information on appropriate programs and conditions which could be imposed if the defendant is placed on community supervision. The report gives the court information regarding restitution to the victim, if any. In cases in which alcohol or drug abuse contributed to the commission of the offense, the defendant must be evaluated during the course of the PSI "to determine the appropriateness of, and a course of conduct necessary for, alcohol or drug rehabilitation for [the] defendant...." *Id.* art. 42.12, § 9(h) (Vernon Supp.2001).

The court heard evidence regarding the circumstances of the offense during the guilt-innocence phase. Because there was no victim, the court did not need a report on restitution. The record does not reflect that Scarborough's crime was alcohol- or drug-related. Finally, Scarborough did not ask that the court suspend imposition of sentence and place him on community supervision. For these reasons, we conclude that the court's error in failing to order a PSI report did not affect Scarborough's "substantial rights." *See* TEX. R.APP. P. 44.2(b). Thus, we overrule Scarborough's second point.

We affirm the judgment.